**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0722-12T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILLIAM SMULLEN,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **August 15, 2014**
>
> **APPELLATE DIVISION**

Submitted October 17, 2013 — Decided August 15, 2014

Before Judges Fuentes, Fasciale and Haas.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 03-07-0411.

Robert A. Warmington, attorney for appellant.

Geoffrey D. Soriano, Somerset County Prosecutor, attorney for respondent (James L. McConnell, Assistant Prosecutor, of counsel; Cameron MacLeod, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

On November 14, 2003, defendant William Smullen pled guilty pursuant to a negotiated plea agreement with the Somerset County Prosecutor's Office to two counts of second degree sexual assault, N.J.S.A. 2C:14-2c(4), based on having consensual sexual

intercourse on two separate occasions with a fifteen-year-old girl. Defendant was twenty-three years old at the time and a lifelong resident of the State of New York. As a mandatory part of this plea agreement, defendant would also be placed on community supervision for life pursuant to N.J.S.A. 2C:43-6.4.

Because defendant travelled from New York to this state to engage in these sexual encounters, he was also charged by the United States Attorney's Office with the federal offense of "Coercion or enticement of a minor female," in violation of 18 U.S.C.A. § 2422. Under the plea agreement, the State agreed to recommend that the custodial part of the sentence imposed by the Superior Court should run concurrent with the sentence imposed by the United States District Court of New Jersey.

On April 23, 2004, the District Court sentenced defendant to serve a term of forty-six months in federal prison. On October 26, 2006, the Superior Court in Somerset County found sufficient grounds to sentence defendant within the third degree range and imposed a term of imprisonment of three years.[1]

---

[1] Because defendant pled guilty to a second degree offense, he was subject to a term of imprisonment of between five to ten years. N.J.S.A. 2C:43-6a(2). Exercising the discretionary authority conferred in N.J.S.A. 2C:44-1f(2), which requires the court to find the mitigating factors preponderate over the aggravating factors, State v. Balfour, 135 N.J. 30, 35 (1994), the judge decided to sentence defendant to a degree lower,
(continued)

Consistent with the plea agreement, the court ordered that this sentence run concurrent with the sentence imposed by the federal court. The court also placed defendant on community supervision for life, as provided for in N.J.S.A. 2C:43-6.4. Defendant did not file a direct appeal challenging any part of his conviction or sentence.

Despite some discrepancy in the record,[2] the post-conviction relief (PCR) court found defendant timely filed a petition seeking PCR pursuant to Rule 3:22-2(a), alleging a denial of his Sixth Amendment right to effective assistance of counsel. Defendant claims he was compelled to plead guilty without being given sufficient time to review with his attorney the information provided by the court concerning the requirements and ramifications of being placed on community supervision for life under N.J.S.A. 2C:43-6.4. The record of the plea hearing

---

(continued)
within a range of no less than three nor more than five years of imprisonment. N.J.S.A. 2C:43-6a(3).

[2] Appellate counsel indicates in his brief before us that defendant filed this PCR petition on May 4, 2012. Citing the time restrictions in Rule 3:22-12(a)(1), the PCR court specifically found defendant's petition was timely "because the Petitioner was sentenced on October 26, 2006 and filed his Petition for Post-Conviction Relief on or about September 27, 2011, just before the five year statute of limitations ran." The State does not dispute the PCR court's findings in this respect.

reflects the trial judge gave defendant a ten-page document,[3] allegedly summarizing the requirements of community supervision for life, and directed defense counsel to review the document with defendant over the court's one-hour lunch recess.

Defendant also claims he was denied effective representation of counsel because his attorney did not discuss with him the specific requirements under N.J.S.A. 2C:43-6.4 during plea negotiations, including whether, as a New York resident, he would be subject to different or additional restrictions upon completion of his custodial sentence. Defendant submitted a certification in which he attests that he only expected "to submit to the specific registration guidelines of the particular version of 'Megan's Law[4]' in effect in the state where I would be residing upon my release (New York)." However, his attorney was totally unaware of the restrictions imposed by New York.

The PCR court denied defendant's petition without conducting an evidentiary hearing. The court held:

---

[3] Defendant did not produce this ten-page document in support of his PCR petition, and neither the prosecutor nor the court have a copy of it in their files.

[4] Although not an issue in this case, we pause to note the common misconception of referring to community supervision for life under N.J.S.A. 2C:43-6.4 as a "Megan's Law" requirement. The requirements imposed under what is commonly referred to as "Megan's Law" are codified under N.J.S.A. 2C:7-1 to -19.

It would be overly onerous on both the defense attorney and the Court to be required to advise Petitioner[s] of the community supervision for life provisions applicable in other states on the chance that a Petitioner might choose to reside in that state and was permitted to under the provisions of the New Jersey community supervision for life.

Defendant now appeals raising the following argument:

POINT I

THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HE WAS NOT PROPERLY ADVISED REGARDING THE CONSEQUENCES OF COMMUNITY SUPERVISION FOR LIFE, INCLUDING THE ELECTRONIC MONITORING PROGRAM, BEFORE AND DURING HIS PLEA, AND MUST THEREFORE BE ALLOWED TO WITHDRAW HIS PLEA.

We agree with defendant and reverse. As a threshold issue, defendant was a lifelong New York resident at the time he pled guilty. Thus, the PCR court's concern about the potential "onerous" burden it would place on defense counsel and the trial judge "to be required to advise [a defendant] of the community supervision for life provisions applicable in other states on the chance that a Petitioner might choose to reside in that state" is not an accurate characterization of the salient facts in this case. (Emphasis added). The record shows that defense counsel, the prosecutor, and the trial judge were all aware that defendant was a lifelong resident of New York, that he expected to return to his home state once he completed the custodial part

of his sentence, and that he expressed particular concern about the New York implications of his New Jersey conviction.

It is undisputed that at the time of the plea hearing, defense counsel was not aware of New Jersey's community supervision requirement. It was the trial judge who introduced the topic and made the following prescient statement:

> There's now a publication coming out from parole to describe what community supervision for life is. So in order to avoid any PCR's at a later date, indicating I didn't know what community supervision for life is, and I'm going to give you [defense counsel] a copy and you can go over with your client, and I'll get it on record you've reviewed it and that will not be a problem in the future. So I'll hold this and take care of another case before we break for lunch.

The following colloquy took place after the court's lunch recess:

> THE COURT: We're back on the William Smullen case. Let me start off, we already have counsel's appearance on this. We got you on record on that one.
>
> [Defense counsel thereafter re-announces his appearance on behalf of defendant.]
>
> THE COURT: And [defense counsel], I take it you've had a chance to review with Mr. Smullen what exactly is meant by community supervision for life.
>
> [DEFENSE COUNSEL]: Yes, I have, your Honor,
>
> THE COURT: And in fact, the Court has, I believe, given you a ten-page form you've

received from the Department of Corrections outlining under the Administrative Code section 10A:71-6.11 as to what is community supervision for life. And you've reviewed that with your client?

[DEFENSE COUNSEL]: Yes, we've reviewed it.

THE COURT: Is that so, Mr. Smullen, you've reviewed that community supervision for life provision?

THE DEFENDANT: Yes, I did.

THE COURT: You understand it completely?

THE DEFENDANT: Yes, I do.

THE COURT: And you want to proceed with the sentence?

THE DEFENDANT: Yes.

THE COURT: And it may [a]ffect where you live, do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: There's a provision in there about supervision by the Department of Corrections in New Jersey; do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you want to go ahead with the plea bargain anyway?

THE DEFENDANT: Yes, I do. One question, my residence is in New York.

THE COURT: Well, it has a provision in there about their supervision about where you live. It may not be at your discretion, it may be at their discretion. So yeah, it

7

may [a]ffect, yes, it may [a]ffect your ability to live in New York.

THE COURT: What do you want to do? You want to continue to live in New York or not? As I sit here today, I have no idea what they're going to say, I just want to make sure you understand you run the risk if they decide you have to stay in New Jersey, you have to stay in New Jersey where they can watch you more closely, do you understand that?

THE DEFENDANT: Yes.

THE COURT: But understanding that you want to go ahead with the plea?

THE DEFENDANT: Yes.

THE COURT: [Addressing defense counsel] Anything else counsel?

[DEFENSE COUNSEL]: I don't believe so, your Honor.

In support of his PCR petition, defendant certified that during the lunch recess his attorney requested the prosecutor to agree "to a postponement, of at least one day, to allow me to have additional time to adequately review and consider [the community supervision for life] conditions, as well as the implications attendant to them." According to defendant, his counsel said the prosecutor "rebuffed this request and stated that his office would immediately withdraw the 5-year flat[5]

---

[5] The term "flat," in the context of a custodial state prison term, is a colloquialism used by lawyers for a term of
(continued)

offer, and increase it to a '7-year flat' offer if [defendant] did not enter my guilty plea that afternoon."

We review a claim of ineffective assistance of counsel under the two-prong test established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and subsequently adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). First, defendant must demonstrate that defense counsel's performance was deficient. Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. Second, he must show there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.

In determining a claim of ineffective assistance of counsel in a case in which a defendant pled guilty, "the issue is whether it is ineffective assistance of counsel for counsel to provide misleading, material information that results in an uninformed plea, and whether that occurred here." State v. Nunez-Valdez, 200 N.J. 129, 139-40 (2009). Community supervision for life under N.J.S.A. 2C:43-6.4 has long been

_____

(continued)
imprisonment without any minimum mandatory term of parole ineligibility.

considered a punitive consequence of a criminal sentence. <u>State v. Schubert</u>, 212 <u>N.J.</u> 295, 308 (2012) (citing <u>State ex rel. B.P.C.</u>, 421 <u>N.J. Super.</u> 329, 354 (App. Div. 2011); <u>State v. Jamgochian</u>, 363 <u>N.J. Super.</u> 220, 224 (App. Div. 2003)). A defendant pleading guilty to an offense triggering the requirements of community supervision for life is entitled to expect his attorney to provide him with complete and accurate information concerning the ramifications of this material aspect of a plea agreement. <u>State v. Agathis</u>, 424 <u>N.J. Super.</u> 16, 23 (App. Div. 2012).

Based on the evidence presented before the PCR court, defendant established a prima facie case of ineffective assistance of counsel and was therefore entitled to an evidentiary hearing pursuant to <u>Rule</u> 3:22-10(b). <u>State v. Preciose</u>, 129 <u>N.J.</u> 451, 462-63 (1992). Defense counsel was entirely uninformed at the plea hearing about the particular requirements of community supervision for life. But for the trial court's impromptu intervention, this issue would have been completely unaddressed. The court's attempt to cure this deficiency by giving defense counsel a one-hour lunch recess to familiarize himself with these requirements, and thereafter provide meaningful, professionally sound advice to defendant on

the implications of the community supervision for life requirements, was patently inadequate.

Even more relevant from defendant's perspective, neither the court nor his attorney provided him with any information about how these restrictions would apply in his home state of New York. We expect a reasonably competent New Jersey attorney to be able to research New York law and make at least a preliminary determination of his or her ability to advise a client about the New York ramifications of pleading guilty to a crime in New Jersey. If after researching New York law, counsel believes he or she is not competent to offer professionally sound advice to the client, then it is counsel's responsibility to consult with, or refer the client to, an attorney who can do so. Leaving the client uninformed about this vital aspect of his decision to accept or reject the State's plea offer is not an option.

In the interest of clarity, we emphasize that defense counsel's subpar legal performance here satisfies the first prong under Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693, and falls within the paradigm articulated by the Court in Nunez-Valdez, supra, 200 N.J. at 138. Counsel should have been aware of the penal consequences defendant was facing under N.J.S.A. 2C:43-6.4, as well as how

they would affect defendant as a New York resident, before engaging in plea negotiations with the State. This is not a case involving the retroactive application of a new rule of law. Cf. Chaidez v United States, 568 U.S. __, 133 S. Ct 1103, 185 L. Ed. 2d 149 (2013); State v. Gaitan, 209 N.J. 339 (2012), cert. denied, 133 S. Ct. 1454, 185 L. Ed. 2d 361 (2013).

We thus remand this matter for the PCR judge to determine whether "'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" Nunez-Valdez, supra, 200 N.J. at 138 (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)).

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0722-12T4